WRIGHT *v.* POSTEL.[1]

*(Circuit Court, E. D. Pennsylvania.　October 13, 1890.)*

1. PATENTS FOR INVENTIONS—PERFECTING INVENTION—DILIGENCE.
　　A patentee who had in 1883–84 described his invention in general terms, and in 1886 described it more fully, but with the addition only of mechanical details, such as would suggest themselves to any mechanic who could have made the device from the first description, and made application for a patent in February, 1887, has not exercised sufficient diligence in reducing his invention to practice, and a reduction to practice by another before the filing of his application renders his patent invalid.

2. SAME—EXTENT OF CLAIM.
　　When a patentee, in order to obtain a patent for an improvement on a device formerly patented by himself, swears that his former patent does not cover his last device, this oath is persuasive evidence against him in an attempt to construe his former patent broadly enough to cover a device substantially the same as that embraced in his second application.

3. SAME—SCOPE OF INVENTION.
　　Complainant's patented device consisted of a wheel loosely supported in a stationary bearing, and having its periphery provided with a series of clamps in which the cards are clamped.　The defendant used a device in which the clamps were attached to an endless chain.　*Held,* although the complainant may have been the first to apply card clamps to an endless conveyer, yet as endless chains had been used, time out of mind, to carry various objects to hand, his patent could not be construed sufficiently broadly to cover defendant's device.

Bill in Equity by Charles A. Wright, to Restrain A. H. Postel from Infringing Complainant's Patents.　In the earlier patent (No. 290,303) the invention was stated to consist in a wheel, loosely supported on a stationary bearing, and having its periphery provided with a series of clamps, by which the cards are clamped, and in many details of construction.　The patent described a wheel loosely supported so as to be capable of being turned by hand, and on the periphery of this wheel are placed a number of clamps, containing cards to be gilded, and in which clamps they were held firmly during the process of gilding.　The operator stood in front of the wheel, and turned it, bringing one clamp after another in front of him.　The operator himself put the gold leaf on the article to be gilded.　The claims sued on were:

"(2) A gilding wheel, formed of a wheel provided on its periphery or circumference with a series of clamps formed of pivoted jaws, and one or more of their clamping edges being exposed to allow of manipulation of the object clamped, having independent clamping devices, by which each clamp may be opened separately, substantially as and for the purpose specified."　"(18) The combination of wheel, B, with rigid jaw, H, hinged jaw, K, of shorter length than jaw, H, and screw, N, having wheel, O, substantially as and for the purpose specified.　(19) The combination of wheel, B, with rigid jaw, H, having prongs, *h,* hinged jaw, K, of shorter length than jaw, H, and having clamping edge, *k,* and screw, N, having wheel, O, substantially as and for the purpose specified."　"(22) The combination of wheel, B, with rigid jaw, H, hinged jaw, K, screw, N, having wheel, O, and wooden blocks, RR, substantially as and for the purpose specified."

The plaintiff's second patent was for a device which had in place of the wheel an endless chain.

[1] Reported by Mark Wilkes Collett, Esq., of the Philadelphia bar.

"The Postel machine consisted essentially of two endless parallel chains engaging with the sprockets of four sprocket wheels, arranged in pairs on parallel shafts at a distance apart, so that each chain engages with the sprockets of two of the wheels. One of these shafts was connected with the motor which runs the machines. By a lever the wheels on the motor shaft could be thrown in or out of gear, and the chains caused to stop or move at the pleasure of the operator. Capable of being attached to the chains by projecting side wings, and attached to them while the machine was in operation, were clamps for holding the cards to be gilded and burnished, each consisting of a rectangular frame, with a projecting piece, to which was pivoted a clamping piece, one end of which passed within the frame, and was held under its top by a spring attached to it and to the top of the frame. Through this top passed a screw with a hand wheel, by which the bearing point of the screw could be pressed down on the clamping piece and the cards clamped. When the screw was reversed, the spring raised and held the clamping piece, and the cards might be removed or inserted. Near the operator there was a supporting piece under each chain, so that during the operation of burnishing the cards the operator might press, with the considerable force required in this operation, against the supporting pieces, and the clamp which contains the cards being burnished could rest against the supporting pieces. The clamps were not locked during the operations of gilding or burnishing, and the sprockets of the wheels near which these operations took place prevent any lateral movement of the chain or clamps."

*Earnest Howard Hunter* and *S. S. Hollingsworth*, for complainant.
*George J. Harding* and *George Harding*, for defendant.

BUTLER, J. No more need be said in this case than is necessary to indicate our reasons for dismissing the bill. The younger of the two patents sued upon (No. 363,936) is invalid. The application was filed January, 1887. Some months previous the defendant had devised and constructed the machine complained of as an infringement. The plaintiff, however, asserts that his invention relates back to a still earlier period. The proofs show that in the winter of 1883–84 he described it in general terms to his solicitor, and that in 1886 he repeated the description more fully. It seems, however, that he did not intend at either date to reduce the invention to practice. His only concern, apparently, was to protect himself in the construction and sale of the machine made under the earlier patent. His monopoly in this served his interests as well as the other would, if competition could be avoided. His solicitude was for the avoidance of such competition. Being advised that the former patent covered the endless-chain device, and would consequently keep others off, he rested content until a short time before the date of his application. Then becoming alarmed at something heard or observed of the defendant's movements, he resolved to apply for a patent, and thus shut him out, if the former patent did not do so. He had not then embodied his invention in a machine for practical use. This conduct, and the purpose which inspired it, are not commendable. One who desires a patent must be vigilant in reducing his invention to practical form, and applying for letters. The patent laws are intended for the benefit of the public, as well as of patentees. They are designed to stimulate invention, for the common advantage. It is, therefore, the

duty of inventors to use reasonable diligence in reducing their conceptions to practice and applying for patents, when desired. They cannot neglect it without danger to their rights. Here the plaintiff not only failed in diligence, but it appears that he did not even intend to apply for a patent at all, unless it should seem necessary as a means to prevent others making these machines. At the time of his first conversation with the solicitor he was as well prepared to reduce his invention to practice and apply for a patent as he was at the date of the second. Any competent mechanic, accustomed to such work, could have constructed the machine from the first description almost, if not quite, as readily as from the second. The details added in the latter embrace no invention, and were such substantially as would present themselves to the mind of such a workman. They are simple mechanical details, in common use for similar purposes.

The validity of the earlier patent (No. 290,303) was not questioned on the argument. If, however, its claims are strictly construed, and thus confined to the particular character of machine described, and manufactured under it, the defendant does not infringe. The plaintiff contends that the claims should be liberally construed, so as to embrace the substitution of an endless chain for the wheel, substantially as shown in the defendant's machine. Whether the plaintiff's sworn declaration when applying for the later patent—in effect that the use of such a chain in his combination is not covered by the earlier patent—upon which others may have acted, and a favorable decision of the office was obtained, should stop him from asserting otherwise now, need not be considered. It is certainly persuasive evidence against him. Aside, however, from this it seems clear that the claims cannot be so construed. The history of the art shows that the use of such chains for analogous uses is old. Time out of mind they have been employed to carry various objects to hand, for use at particular places. Applying them to the carriage of clamps, in the operation of gilding cards, shows nothing new. If the clamps were novel and patentable, the combination might doubtless be made the subject of a claim. They are not, however, as the plaintiff virtually acknowledges by the omission to base any claim upon them except in combination with his wheel. Nor is there anything patentable in the method of their attachment, or the means employed for keeping them in position. A decree must, therefore, be entered dismissing the bill with costs.